IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHAWN MICHAEL DICKINSON, #256934, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:21-cv-281-ECM-JTA |
| STATE OF ALABAMA, et al., | ) ) | (WO) |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

Plaintiff Shawn Michael Dickinson, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. (Doc. No. 1.) Plaintiff alleges that, following a purported assault by other inmates while incarcerated at Bullock Correctional Facility in August 2019, Defendants Warden Jones, Warden McClain, Captain McCorvey, Officer Blair, Officer Cottrell, and the State of Alabama violated his Eighth and Fourteenth Amendment rights. (*Id.*; *see also* Docs. No. 10, 13.)[1] As relief, Plaintiff seeks twenty million dollars in monetary damages. (*Id.* at 6, 7.)

On April 14, 2021, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. (Doc. No. 4.) On October 22, 2021, Defendants Jones, McClain, McCorvey, and Cottrell filed a joint Special Report (Doc. No. 43), in which they

---

[1] Plaintiff filed a motion for leave to amend (Doc. No. 10) seeking to substitute Officer Cottrell for Officer Cunningham, who is named in the Complaint. The Court granted Plaintiff's motion on May 4, 2021. (Doc. No. 13.)

move for summary judgment and provide supporting evidentiary materials (Docs. No. 43-1 through 43-5, 44-1).[2] On November 3, 2021, the Court directed Plaintiff to respond to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. No. 46.) Plaintiff filed a response (Doc. No. 47-1) and supporting affidavit (Doc. No. 47-2).

In its November 3, 2021 Order, the Court notified the parties that "the Court may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the [Special] Report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response [by Plaintiff]." (Doc. No. 46 at 2–3.) Pursuant to that notice, the undersigned now construes Defendants' Special Report as a motion for summary judgment and, for the reasons set forth below, recommends that judgment be entered in favor of Defendants.

## II.    JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama, Northern Division.

---

[2] At the time of this filing, Defendant Blair has failed to respond to Plaintiff's allegations despite multiple opportunities to do so. (*See* Docs. No. 14, 21, 28, 35, 42, 48.) The record indicates that Defendant Blair was served with the Complaint in May 2021. (Doc. No. 15.)

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal

quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## IV.    RELEVANT FACTS[3]

The following facts derive from Plaintiff's verified Complaint (Doc. No. 1) and accompanying sworn affidavits (Docs. No. 1-1, 1-2) as well as the sworn evidentiary materials proffered by Defendants (Docs. No. 43-1 through 43-4, 44-1). Further, although the Court notes the self-serving allegations in Plaintiff's response brief (Doc. No. 47-1), the Court cannot rely on unsworn argument from a summary judgment brief as evidence sufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(a), (4); *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (holding that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment" and "[a]n unsworn statement is incompetent to raise a fact issue precluding summary judgment");

---

[3] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

*see also Travaglio v. Am. Express Co*., 735 F.3d 1266, 1270 (11th Cir. 2013) ("Statements by counsel in briefs are not evidence."); *Smith v. Athens Gastroenterology Ass'n, P.C*., No. 3:16-CV-122 (CDL), 2017 WL 5196393, at *3 (M.D. Ga. Nov. 9, 2017) (noting that arguments in a summary judgment response brief are not evidence); *Duke v. Atria, Inc*., No. 2:03-CV-00934-DRB, 2005 WL 1514149, at *2 (M.D. Ala. June 27, 2005) (noting that "advocacy is not evidence and briefs cannot substitute for affidavits and other admissible evidence to defeat a motion for summary judgment").

Finally, the Court notes that the "affidavit" Plaintiff submitted of his fellow inmate, Ronald Bishop (Doc. No. 47-2), is unsworn and does not otherwise indicate that it was made under penalty of perjury. *Walker v. Dorriety*, No. 1:20-CV-1007-ECM-SMD, 2023 WL 2484790, at *2 (M.D. Ala. Jan. 30, 2023), *report and recommendation adopted*, No. 1:20-CV-1007-ECM, 2023 WL 2481229 (M.D. Ala. Mar. 13, 2023) ("[M]erely notarizing [a] signature does not transform [a] document into an affidavit that may be used for summary judgment purposes." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306-1307 (5th Cir. 1988)[4] (citing *Flowers v. Abex Corp*. 580 F. Supp. 1230, 1233 n. 2 (N.D. Ill. 1984))). Yet, for the sake of considering the motion for summary judgment, the Court assumes that Bishop could testify under oath as to the statements in his affidavit, and thus the Court will consider that affidavit. *See* Fed. R. Civ. P. 56(c)(2) (providing that, on summary judgment, "[a] party may object that the material cited to support or dispute a

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

fact cannot be presented in a form that would be admissible in evidence"). *But see* 28 U.S.C. § 1746 (concerning the admissibility of statements not sworn before a notary but otherwise affirming the statement is made under penalty of perjury); Fed. R. Civ. P. 56(c) (concerning the requirements of using affidavit evidence on summary judgment).

The Complaint and accompanying affidavits set forth the following: On either August 25, 2019 or August 28, 2019[5], Plaintiff "was hit repeatedly by numerous unknown assailants that had weapons of broom and mop handles (left unsecure by the correctional staff)." (Doc. No. 1 at 4.) Plaintiff received a broken right arm, fractured left eye socket, cracked ribs, black eyes, and several lacerations and bruises. (*Id*.) "Upon the count of inmates[,] the correctional staff observed [Plaintiff's] condition and rendered no assistance." (*Id*.) Defendants Blair and Cottrell "both observed [Plaintiff] injured, in a pool of blood, and yet done nothing." (Doc. No. 1-1.) Plaintiff had to wait 10 days before receiving medical care[6] "due to being held hostage by the inmates that attacked [him,] which the correctional officers had full knowledge of and done nothing for [him]." (Doc. No. 1 at 4.)

Once Plaintiff received the medical care he needed, "it was substandard." (*Id*. at 5.) Plaintiff "continues to request medical care for appointments to specialists . . . in order to

---

[5] Plaintiff's Complaint asserts that the assault took place on August 28 (Doc. No. 1 at 2, 4) and his attachment thereto asserts that the assault took place on August 25 (Doc. No. 1-1 at 1).

[6] In the following paragraph, Plaintiff alleges that he had to wait 30 days before receiving medical care. (Doc. No. 1 at 5.) Elsewhere in the Complaint, he alleges that he had to wait "approx. 8 days." (*Id*. at 3.)

correct [his] ongoing issues." (*Id*.) Moreover, unidentified "ADOC staff placed [Plaintiff] into the same dorm with the same people that first attacked [him]." (*Id*.) Based on these assertions, Plaintiff believes Defendants violated his Eighth Amendment right against cruel and unusual punishment and Fourteenth Amendment right to equal protection. (*Id*. at 3, 4.)

In their Special Report, Defendants each aver that there are no records in Plaintiff's prison file to substantiate his allegations that he was attacked and injured by numerous inmates on or around August 28, 2019. (Docs. No. 43-1, 43-2, 43-3, 44-1.) Although his medical file shows that he was treated for some of the injuries he claims to have received during that attack, the treatment times occurred either prior to August 2019 or, in some cases, in the year 2020. (*Id*.) Plaintiff never told any Defendant that he felt in danger prior to or after August 28, 2019, and Plaintiff never reported to Defendants or other officials that he was injured on August 28, 2019. (*Id*.)

Plaintiff's prison file establishes the following events:

On July 24, 2019, Plaintiff reported that he "fell off [the] top rack of [his] bed," and he had a three-centimeter laceration on his scalp for which he received sutures. (Doc. No. 43-4 at 52, 75.) On August 6, 2019, Plaintiff was called to the Healthcare Unit for removal of his sutures, but Plaintiff stated that he had already removed them himself. (*Id*. at 74.)

On September 23, 2019, Plaintiff again reported that he "fell off [his] top bunk three days ago" after "doing Flakka"[7] and he had an injured right arm, swollen right hand, and pain in his face and ribs. (*Id*. at 51, 73.) Plaintiff received an x-ray that same day, which

---

[7] "Flakka (alpha-PVP), is a dangerous drug that is similar to the street drug commonly known as bath salts." *See* https://www.dea.gov/factsheets/flakka-alpha-pvp (last visited on June 24, 2024).

revealed an acute distal ulnar fracture of the right forearm and no fracture of the ribs. (*Id*. at 85–86.) Plaintiff was directed to return to the Healthcare Unit the following day. (*Id*. at 73.)

On September 24, 2019, Plaintiff failed to report to the Healthcare Unit. (*Id*. at 26, 71.) Plaintiff was directed to sign up for another sick call screening if any problems persisted. (*Id*.)

On October 4, 2019, Tai Q. Chung, M.D., placed Plaintiff's right arm in a cast. (*Id*. at 98, 99.) Dr. Chung noted that Plaintiff's right forearm pain "came on when he was hit there with a stick some two weeks ago," but had "no previous fracture in this forearm." (*Id*. at 99.)

On October 6, 2019, Plaintiff submitted a Sick Call Request stating:

> My arm keeps poping [sic] in side the bone is not in line with the other side because it poped [sic] out of place I can tell and feel it I[']m in from 1 to 10 pain a 10 pluse [sic] . . . . I don't think my arm going to heal like this because the bone keeps moveing [sic] around in side. I'm asking for a x ray so we can see how close the bone is and something for pain other then [sic] Advil[.]

(*Id*. at 69–70.)

On October 30, 2019, medical personnel ordered Plaintiff another x-ray of his right forearm. (*Id*. at 46.) On November 1, 2019, Dr. Chung noted that Plaintiff "took his cast off 2 days ago" and that X-rays showed a healing callous. (*Id*. at 96.) Dr. Chung prescribed a "[w]rist brace for support" and "[g]entle exercises to regain maximal motion of the wrist and fingers." (*Id*.) He directed Plaintiff to "return in one month with [X-]rays of the right forearm." (*Id*.)

On January 21, 2020, medical personnel reported that Plaintiff was uncooperative, refused to stay for his medical appointment, and left with verbal hostility. (*Id*. at 81.)

On January 31, 2020, medical personnel ordered Plaintiff facial x-rays. (*Id*. at 35.) Results from the x-rays revealed:

> The osseous structures are unremarkable. There is no fracture or periosteal reaction. There is no focal bone lesion. Alignment is anatomic. There is no soft tissue swelling or foreign body identified. The orbits, mandible and nasal bone appear intact.[] No acute bone abnormality.

(*Id*. at 84.)

On February 3, 2020, a radiology report related to Plaintiff's complaints of facial jaw pain and bruising to the left eye stated:

> The osseous structures are unremarkable. There is no fracture or periosteal reaction. There is not focal bone lesion. Alignment is anatomic. There is no soft tissue swelling or foreign body identified. The orbits, mandible, and nasal bone appear intact.

(Doc. No. 43-4 at 84.)

On February 19, 2020, Plaintiff was given an eye examination in which medical personnel reported that he had "no facial/orbital fracture." (*Id*. at 93.) Plaintiff had 20/25 vision in his right eye and 20/30 vision in his left eye. (*Id*.)

On April 1, 2020, Plaintiff submitted a Sick Call Request stating:

> About 4 months ago[,] I was hit in my left eye. Now my eye is losing its vision. I've had a black eye since I am requesting an MRI on my eye to check for serious injury. Sent to a free world optomitrist [sic]. My eye is cockeyed with the other.

(*Id*. at 63.)

On April 4, 2020, Plaintiff reported that he suffered a left eye injury on September 23, 2020[8] during an assault in which he was beat with sticks. (*Id*. at 64.)

On August 1, 2020, Plaintiff reported that he had been "having dizzy spells" for two weeks because he was "hit in the head two months ago." (*Id*. at 61.)

On September 3, 2020, Plaintiff submitted a Sick Call Request seeking an outpatient appointment with an eye doctor and, on September 7, 2020, Plaintiff reported that his eye hurt because he was "hit in the eye" in October 2019. (*Id*. at 54.)

On October 19, 2020, medical personnel ordered an examination of Plaintiff's left eye, noting that he suffered from "enophthalmos" and had "multiple facial injuries" with "repeated trauma" and "limited eye movement" in the left eye. (*Id*. at 89, 91 92.)

On November 4, 2020, Plaintiff underwent a CT scan of his left eye socket at Jackson Imaging Center for a possible orbital fracture. (*Id*. at 82, 88, 89, 90, 92.) Bradley Thomas, M.D., made the following findings based on those results:

> The ocular globes are intact. No radiopaque foreign body. The orbital fat is maintained. The extraocular muscles are intact.
>
> There is a left-sided nasal bone deformity, discontinuity that appears old, no soft tissue swelling.
>
> There is mild bowing of the left lamina papyracea, and also inferior bowing of the orbital floor may be congenital or related to old injury, no defect or herniation of orbital fat.[]
>
> ….
>
> IMPRESSION
> Old-appearing deformity left nasal bone.

---

[8] The Court takes judicial notice that the September 23, 2020 date cannot be correct. April 4, 2020 falls over five months before that date.

> Some bowing of the left medial orbital wall/lamina papyracea and left orbital floor, no cortical disruption, appears chronic.
> No acute fracture evident.

(*Id*. at 82.)

In response[9] to the evidence submitted by Defendants, Plaintiff states that Defendants Blair and Cottrell "did in fact conduct a institutional count in F2 dorm at Bullock" but Plaintiff did not receive immediate medical attention. (Doc. No. 47-1 at 1–2.) Plaintiff was "sitting on a wall on the floor[,] not on a bunk in the open[,] under the windows on the right." (*Id*. at 2.) Plaintiff had "approximately a pint and a half of blood dripping off his head and eye with at lest [sic] a 8 inch cut on top of [his] head with a big arm that was broken." (*Id*.) However, Defendants "jist [sic] counted right over Plaintiff." (*Id*.) They "acted as if no one but a number in count time was sitting on the wall[,] not a human bleeding bad and big cuts over each eye." (*Id*.)

Moreover, at some point prior to the purported attack, Plaintiff alleges that he asked Defendant Cottrell "to be moved to K Dorm" because he was "'in danger' of getting in a fight" but Defendant Cottrell replied that Plaintiff had to "wait until Mr[.] White came back next week." (*Id*. at 3.) Plaintiff then "recievid [sic] a brutal betting [sic]," and "the

---

[9] As noted previously, the allegations in Plaintiff's response brief (Doc. No. 47-1) are not sworn allegations and are not made under penalty of perjury. Therefore, statements by Plaintiff in his response brief cannot be considered evidence in opposition to the motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(a), (4); *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (holding that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment" and "[a]n unsworn statement is incompetent to raise a fact issue precluding summary judgment").

Correctional Officers working on the floor . . . past [sic] over Plaintiff dieing [sic] on a wall in F2 dorm." (*Id*.) "Plaintiff felt as if he would die." (*Id*.) Thereafter,

> more then [sic] 5 gang members told Plaintiff if he said anything to medical or go to medical they would be back to beat Plaintiff up tell [sic] he past [sic] away not to say anything about getting beat up with sticks to anyone but after more then 3 days Plaintiff sliped [sic] off at meal call and went to medical[.] That's when the nurse at hand put Plaintiff on the x ray list [and] Plaintiff then had to wait for at lest [sic] 2 weeks for a hard cast to be put on [his] arm.

(*Id*. at 3–4.) Plaintiff believes that, if the broomsticks and mop handles with which he was hit had been better safeguarded, "this would have never happen." (*Id*. at 4.) However, "ther [sic] is no mop stick and broom handle sign in sheet and sign out sheet [and] officers have a no prodocalll [sic] for the mops and brooms . . . at Bullock[.]" (*Id*.)

Finally, Plaintiff proffers the "affidavit"[10] of fellow inmate Ronald Bishop, who stated:

> Mr. Dickinson had come to my living area with a Big Black eye about a week Before he got his Arm Broke in K Dorm Askeing For help and what should he do. I tried to get him to move to my living area and in going to officer Contrell[] he said that Dickinson would have to wait for <u>officer white</u> to make the move next or a[t] lest 2 day's due to the lack of security and protocll Dickinson was put on hold even after the officer was showed and tolD that Dickinson was haveing problems.

 (Doc. No. 47-2 at 1 (sic).)

With respect to medical care (or lack thereof) provided to Plaintiff, Bishop stated:

---

[10] As previously noted, Bishop's "affidavit" is unsworn and does not state that it was made under penalty of perjury. For the sake of considering the motion for summary judgment, the court assumes that Bishop could testify under oath as to the statements in his affidavit.

The officer Never ask have you been to medical or not for the Big Black eye Dickinson had Before he then got Beat with sticks and Received a Broke Arm after Just allmost getting Better from the last Black eye.

(*Id.* (sic).)

Bishop further states that Bullock "has had many men be killed and many broke arm's by a stick, mops or broom handles more then [sic] sticks" and "all the knifes found each time a shack [sic] down is done is jist [sic] upseting [sic]." (*Id.*)

## V.   DISCUSSION

a.   Defendant State of Alabama is immune from suit.

First, to the extent Plaintiff seeks to state any claims against the State of Alabama, the State is entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution bars suits for damages against a state unless the state waives its Eleventh Amendment immunity or Congress abrogates the immunity. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr*, 916 F.2d at 1525). Moreover, a state is not a "person" subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's 42 U.S.C. § 1983 claims against the State are due to be dismissed.

b.   Plaintiff has failed to prosecute his claims against Defendant Blair and, regardless, default judgment would be improper in this case.

Plaintiff filed his Complaint on September 18, 2020. (Doc. No. 1 at 7.) A returned executed summons was filed on May 7, 2021, indicating that Defendant Blair was served

with a copy of the Complaint on May 4, 2021. (Doc. No. 15.) The Court subsequently extended Defendant Blair's response deadline to December 22, 2021 (Doc. No. 48), but Defendant Blair did not file a response. Under the Federal Rules of Civil Procedure, if a defendant fails to respond to a complaint, the plaintiff may move for a Clerk's entry of default. *See* Fed. R. Civ. P. 55(a). Thereafter, the plaintiff may move for a default judgment. *See* Fed. R. Civ. P. 55(b). The record demonstrates that, although Defendant Blair has failed to respond to the Complaint and nearly three years have passed since the imposed response deadline, Plaintiff has not sought a Clerk's entry of default or subsequent default judgment.

In an Order issued on April 14, 2021, the Court cautioned Plaintiff that he must "diligently prosecute this action or face the possibility of dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b)." (Doc. No. 4 at 3.) The authority of courts to impose sanctions for failure to prosecute is longstanding and acknowledged by Rule 41(b) of the Federal Rules of Civil Procedure. *See Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). This authority "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* It further empowers the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630–31. Accordingly, Plaintiff's failure to prosecute his claims against Defendant Blair for a period of nearly three years is grounds for dismissal of those claims without prejudice. *See, e.g., Allen v. Uncle John Holdings, LLC*, No. 17-0222, 2019 WL 2552211, at *2 (S.D. Ala. June 20, 2019) (finding that, where plaintiffs had not sought entry of default or default judgment against defendants for a period of two years, and such

failure to prosecute appeared to be the result of negligence or mistake rather than willful contempt, dismissal without prejudice was appropriate).

Although the Court is certainly mindful of Plaintiff's status as a *pro se* litigant, *pro se* litigants are nevertheless bound by the Federal Rules of Civil Procedure as well as this Court's directives. *See, e.g., Wells v. Royal Caribbean Int'l Cruises Ltd.*, No. 20-13378, 2021 WL 3047173, at *2 (11th Cir. July 20, 2021). Moreover, even if Plaintiff had taken the necessary steps to move for entry of default and then default judgment, a defendant's "failure to appear and the Clerk's subsequent entry of default against [him] do[es] not automatically entitle [Plaintiff] to a default judgment." *Capitol Recs. v. Rita Carmichael*, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). Rather, "[t]he entry of a default judgment is committed to the discretion of the district court," *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985), and "default judgments are generally disfavored." *Surtain*, 789 F.3d at 1245 (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)).

A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004). Instead, it acts only as an admission by the defaulted defendant as to the well-pleaded allegations of fact in the complaint. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) ("It is well settled that '[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact,' but '[t]he defendant is not held to admit facts that are not well-pleaded.'") (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Eagle Hosp. Physicians, LLC v.*

16

*SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citations omitted). Therefore, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

Accordingly, before granting default judgment, "the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). The Court may not look to materials outside the four corners of the complaint when deciding a motion for default judgment. *See Surtain*, 789 F.3d at 1245 (interpreting the default judgment standard "as being akin to that necessary to survive a motion to dismiss for failure to state a claim") (citation omitted); *Barr v. Giveffect, Inc.*, No. 1:20-cv-02364, 2021 WL 2451509, at *1 (N.D. Ga. Apr. 15, 2021) ("A default constitutes admission of all well-pleaded factual allegations in the complaint but not facts outside the complaint, facts improperly pleaded, or conclusions of law."); *Nelson v. Atlas Apartment Homes, LLC*, No. 6:20-cv-879, 2020 WL 10456792, at *2 (M.D. Fla. Dec. 28, 2020) ("A party . . . may not rely on (nor may the Court consider) other evidence or argument outside the complaint and attachments thereto in determining whether the plaintiff has adequately stated a claim for which relief may be granted.") (citations omitted).

Upon review of the Complaint and attachments thereto, the undersigned finds that default judgment would be improper in this case. Indeed, the Complaint states only a single

allegation specifically pertaining to Defendant Blair: Plaintiff was assaulted by unknown inmates and "then left without medical attention (even after being observed by [Defendant] Blair and Cunningham) for approx 8 days."[11] (Doc. No. 1 at 2–3.) In an affidavit attached thereto, Plaintiff further states: "[Defendants] Blair . . . and Cunningham . . . both observed me injured in a pool of blood and yet done nothing."[12] (Doc. No. 1-1 at 1.) These allegations, without more, are insufficient to succeed on an Eighth Amendment deprivation of medical care claim in this instance.

"[A] prison official violates the Eighth Amendment only when two requirements are met." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). First, "the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, 'objectively, sufficiently serious.'" *Id*. at 1262 (quoting *Farmer*, 511 U.S. at 834). Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind'— *i.e.*, 'deliberate indifference.'" *Id*. at 1255 (quoting *Farmer*, 511 U.S. at 834). To establish

---

[11] Or 10 days (Doc. No. 1 at 4) or 30 days (*id*. at 5). The Court further notes as an aside that, while it will not consider materials outside the Complaint in making a default judgment determination, Plaintiff later claims to have received medical attention after "more then [sic] 3 days." (Doc. No. 47-1 at 3.)

[12] Plaintiff further alleges, more vaguely, that "the accused provided lack of security" because unidentified correctional staff left broom and mop handles "unsecure"; unidentified correctional staff "observed [Plaintiff's] condition and rendered no assistance"; unidentified correctional staff "had full knowledge" that Plaintiff was "being held hostage" by his assailants "and done nothing for [him]"; unidentified correctional staff "placed [Plaintiff] into the same dorm with [his assailants]"; and "the ADOC and those that are mentioned above have no care for the treatment of those in its care and custody." (Doc. No. 1 at 4–5; *see also* Doc. No. 1-1.) These allegations wholly fail to identify Defendant Blair as the individual engaging in any unconstitutional conduct and, regardless, fail to establish a constitutional claim against Defendant Blair.

deliberate indifference, "the plaintiff must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,' . . . and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id*. at 1262.[13]

Although Plaintiff has set forth allegations sufficient to demonstrate an objectively serious medical need, he has failed to demonstrate that Defendant Blair acted with deliberate indifference to that need. Although he alleges that Defendant Blair "done nothing" after seeing him bleeding (Doc. No. 1-1), he provides no further allegations to demonstrate that Defendant Blair was actually, subjectively aware that his own conduct—or lack thereof—placed Plaintiff at substantial risk of serious harm. He does not allege, for instance, that he told Defendant Blair about his purported assault; that he told Defendant Blair he feared a further assault; or that he sought any help, medical or otherwise, from Defendant Blair. There are also no allegations suggesting that Defendant Blair otherwise knew Plaintiff had been attacked or that Plaintiff's injuries, to the extent they were seen, placed Defendant Blair on notice that his failure to seek immediate medical attention for Plaintiff may result in a substantial risk of serious harm.[14]

---

[13] "[C]ivil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is *either known or so obvious that it should be known*." *Wade*, 106 F.4th at 1256 (citing *Farmer*, 511 U.S. at 836). By contrast, "criminal law . . . generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*." *Id*. (citing *Farmer*, 511 U.S. at 836–37).

[14] *See, e.g., Zimmerman v. Cutler*, 657 F. App'x 340, 348 (5th Cir. 2016) (holding that plaintiff failed to demonstrate a claim of deliberate indifference despite his allegations that defendant "saw [his] arm was scratched and bleeding" because "[t]he fracture in [plaintiff's] arm was not obvious" and plaintiff "offered no evidence that [defendant] was 'actually aware of the risk' of substantial harm and 'consciously disregarded it'") (citation omitted).

Indeed, Plaintiff repeatedly alleges that he did not tell *anyone* he was in need of assistance or seek any medical attention until eight, 10, or 30 days after the incident occurred. (*See* Doc. No. 1; Doc. No. 1-1 at 1.) Although he alleges this was because he was "held hostage" by other inmates, he provides no allegations that Defendant Blair specifically was aware of these circumstances.[15] He further indicates that he had contact with other correctional staff during that time from whom he *could* have sought assistance, but he did not, and there is no showing that Plaintiff suffered further harm based on his delayed medical treatment. Based on these allegations and findings, the Court cannot reasonably infer that Defendant Blair was actually, subjectively aware that failure to seek medical treatment on Plaintiff's behalf placed Plaintiff at substantial risk of serious harm.[16]

Absent any allegations that Defendant Blair was actually, subjectively aware of a substantial risk of serious harm to Plaintiff when he failed to immediately seek or render medical treatment, the undersigned does not find "that there is a substantive, sufficient basis in the pleadings for the particular relief sought," *Tyco Fire & Sec., LLC*, 218 F. App'x at 863, which, in this case, is twenty million dollars in damages. Thus, even if Plaintiff had sought entry of default and default judgment against Defendant Blair—and he has not—

---

[15] To the contrary, Plaintiff later claims that his assault occurred on Defendant Blair's last day of employment at Bullock (Doc. No. 47-1 at 1), which indicates that Defendant Blair had no knowledge of any events that occurred thereafter.

[16] Indeed, whether Defendant Blair reasonably *should* have been made aware based on his observation of Plaintiff, "failure to alleviate a significant risk that [an official] should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" under the Eighth Amendment. *Farmer*, 511 U.S. at 837.

the undersigned finds that default judgment would be improper in this instance. *See Hamm*, 774 F.2d at 1576; *Surtain*, 789 F.3d at 1245. Accordingly, Plaintiff's claims against Defendant Blair are due to be DISMISSED without prejudice.[17]

> c.    To the extent Plaintiff seeks monetary damages from Defendants Jones, McClain, McCorvey, and Cottrell in their official capacities, Defendants are entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). As stated above, Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes*, 701 F. App'x at 753 (citing *Carr*, 916 F.2d at 1525). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants Jones, McClain, McCorvey, and Cottrell in their official capacities, Defendants are entitled to sovereign immunity.[18] *See, e.g., Selensky v. Alabama*,

---

[17] Plaintiff has further failed to state any factual allegations in support of a Fourteenth Amendment equal protection claim against Defendant Blair. Although he states vaguely that a "violation of the 14th Amendment to equal protection" occurred (Doc. No. 1 at 3), he wholly fails to identify (1) who violated the Fourteenth Amendment and how; and (2) any similarly situated individuals who received more favorable treatment than him. *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010) (citations omitted).

[18] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will*, 491 U.S. at 71; *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

      d.      Plaintiff has failed to establish a genuine issue of material fact as to an Eighth Amendment deliberate indifference claim against Defendants Jones, McClain, McCorvey, and Cottrell in their individual capacities.

The Court interprets Plaintiff's allegations as attempting to assert an Eighth Amendment deliberate indifference claim against all the remaining Defendants for failing to protect him from an alleged assault by other inmates and against Defendant Cottrell for delaying him medical care thereafter. However, for the following reasons, Plaintiff has failed to establish a genuine issue of material fact as to either of these purported claims.

      i.      <u>Failure to Protect</u>

As to Plaintiff's failure to protect claim against Defendants, the Eighth Amendment imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer*, 511 U.S. at 832–33 (citations omitted). Still, it is well-established that not every injury suffered by an inmate at the hands of another "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Id.* at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). To state a viable claim under the Eighth Amendment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).

As explained above, a constitutional violation occurs only if a prison official is deliberately indifferent to a known risk of objectively, sufficiently serious harm to an

inmate. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection."). A risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he . . . also draw[s] th[at] inference." *Farmer*, 511 U.S. at 837 (emphasis added). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to establish liability. *Id*. at 838. Moreover, the risk of harm to the inmate must be a "strong likelihood, rather than a mere possibility," *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (citation omitted), and the defendant must once again be "actually, subjectively aware that *his own conduct* caused a substantial risk of serious harm to the plaintiff." *Wade*, 106 F.4th at 1262 (emphasis added).

In his Complaint, Plaintiff claims that the named Defendants "provided lack of security as [Plaintiff] received a brutal beating from other inmates." (Doc. No. 1 at 4.) Specifically, Plaintiff was hit with "broom and mop handles (left unsecure by the correctional staff)." (*Id*.; *see also* Doc. No. 1-1 at 1 ("I was attacked . . . using unsecure broken mop and broom handles. That the correctional staff left unsecure.").) Plaintiff claims that "the DOC staff failed in the performance of thier [sic] duties to secure these mops & brooms." (Doc. No. 1-1 at 1.) In his response to Defendants' Special Report, Plaintiff further claims:

> [T]her [sic] is no mop stick and broom handle sign in sheet and sign out sheet officers have a no prodocall [sic] for the mops and brooms yes at Bullock in each dorm they have a very small coleset [sic] that a inmate in the dorm has a combo for a combbnation [sic] lock[.] But the mops and sticks on the brooms or not counted each time mops or left[.]

(Doc. No. 47-1 at 4.)[19]

These assertions fail to demonstrate that any of the Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff. Indeed, there are no allegations or evidence sufficient to establish that any of the Defendants were aware that the mops and brooms posed a strong likelihood of risk to Plaintiff prior to the alleged assault. *See Johnson v. Lang*, No. 19-14278, 2022 WL 2734421, at *3 (11th Cir. July 14, 2022) ("[O]ccasional, isolated attacks by one prisoner on another" are insufficient to establish the "[e]xtreme levels of prisoner-on-prisoner violence [that] may create a substantial risk of serious harm.") (citation omitted). At most, leaving the mops and brooms "unsecure" under these circumstances may demonstrate negligence by the responsible individual(s), but it is well-settled that mere negligence does not equate to deliberate indifference. *See Wade*, 106 F.4th at 1262 (clarifying that the deliberate indifference standard requires the defendant to have acted with subjective recklessness).[20]

In his response to Defendants' Special Report, Plaintiff further claims:

---

[19] Again, Plaintiff's response brief (Doc. No. 47-1) is not sworn and does not include a statement that it was made under penalty of perjury. The unsworn statements in it are not sufficient to overcome summary judgment. Fed. R. Civ. P. 56(c)(1)(a), (4); *Roy*, 53 F.4th at 1347.

[20] Prior to *Wade*, although the deliberate indifference standard was not precisely defined, it was nevertheless clear that the defendant must have engaged in conduct that exceeds mere negligence. *See Smith v. Wood*, No. 20-12918, 2021 WL 4452526, at *3 (11th Cir. Sept. 29, 2021) (noting that, to establish deliberate indifference, the defendant must have engaged in conduct that exceeds either gross negligence or mere negligence and collecting cases in support).

> Plaintiff did in fact tell one of the officers to be moved to K Dorm but
> [Defendant] Cottrell and asked to be moved he, "replied" that Plaintiff had
> to wait until Mr. White came back next week even after he was told that
> Plaintiff was "in danger" of getting in a fight[.] Plaintiff did in fact ask to be
> separated for his well being and safety[.]

(Doc. No. 47-1 at 3.) In an affidavit attached to Plaintiff's response, inmate Ronald Bishop

states:

> I tried to get [Plaintiff] to move to my living area and in going to [Defendant
> Cottrell) he said that [Plaintiff] would have to wait for Officer White to make
> the move next or a lest [sic] 2 day's due to the lack of security and protocll
> [sic] [Plaintiff] was put on hold even after the officer was showed and told
> that [Plaintiff] was haveing [sic] problems[.]

(Doc. No. 47-2 at 1.)

As an initial matter, Plaintiff did not bring this claim against Defendant Cottrell in

his Complaint and instead raised it for the first time in his response to Defendants' motion

for summary judgment. It is well-established that a plaintiff may not raise a new claim or

theory of relief for the first time in response to a defendant's motion for summary judgment.

*See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff

may not amend [his] complaint through argument in a brief opposing summary

judgment."); *see also Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 708 (11th Cir.

2020). Nonetheless, even if the Court were to consider a claim not included in the

Complaint, Plaintiff's vague assertions that he told Defendant Cottrell he was in "'in

danger' of getting in a fight" (Doc. No. 47-1 at 3) and Defendant Cottrell "was showed and

told that [Plaintiff] was haveing [sic] problems" (Doc. No. 47-2 at 1) are insufficient to

demonstrate a failure to protect claim, as they are unsworn statements in a brief and fail to

establish Defendant Cottrell's subjective awareness of a strong likelihood of serious harm.[21]

Bishop's "affidavit," which is not sworn, at most demonstrates that, when Bishop asked Cottrell to move Plaintiff to his living area, Cottrell stated that the move would take one or two days for "[O]fficer [W]hite" to complete due to "the lack of security and protoc[ol]." (Doc. No. 47-2 at 1.) Plaintiff has not explained how Cottrell's cooperation with the move, which Cottrell merely stated would take one or two days for another officer to complete, reflected that Cottrell was subjectively aware that his own actions placed Plaintiff at serious risk of harm. Nor does Bishop provide testimony that Cottrell's actions had anything to do with preventing Plaintiff from moving or delaying the move. According to Bishop, it was not Cottrell, but Officer White, who was responsible for effectuating the requested move.

Consequently, Defendants are entitled to summary judgment on Plaintiff's failure to protect claims.

---

[21] *See, e.g., Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) ("The unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'[] Successful deliberate-indifference claims will generally require some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm.") (citations omitted); *Alsobrook v. Alvarado*, 656 F. App'x 489, 494 (11th Cir. 2016) ("Just before the fight, [plaintiff's cellmate] made some cryptic remarks to [plaintiff] about the cellmates having 'problems' and needing to be separated. Those types of statements, without more, are not enough to make a guard subjectively aware of a substantial risk of serious harm.[] To hold otherwise would be to permit the inmates to select their own cellmates.") (citation omitted).

ii.    Delayed Medical Treatment

As to Plaintiff's delayed medical care claim against Defendant Cottrell, and as explained above, to succeed on such a claim, a plaintiff must demonstrate (1) an "objectively, sufficiently serious" medical need; and (2) that the defendant responded with "subjective recklessness as used in the criminal law," which means that he "was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade*, 106 F.4th at 1262 (citing *Farmer*, 511 U.S. at 834).

In his Complaint, Plaintiff asserts simply that Defendant Cottrell "observed" him on the day of his assault and failed to seek medical attention on his behalf. (Doc. No. 1 at 3.) In his sworn affidavit attached to the Complaint, Plaintiff avers that, following his assault, Defendant Cottrell "observed [him] injured in a pool of blood and yet done nothing." [22] (Doc. No. 1-1 at 1.) In his response[23] to Defendants' Special Report, he further claims that he "was sitting on a wall on the floor not on a bunk in the open under the windows on the right" and had "approximately a pint and a half of blood dripping off his head and eye with at lest [sic] a 8 inch cut on top of [his] head with a big arm that was broken." (Doc. No. 47-1 at 2.)

Plaintiff's unrefuted medical records do nothing to bolster this version of events. They demonstrate that, more than a month before Plaintiff's alleged assault, in July of

---

[22] In contrast, Bishop stated that, at the time he asked Cottrell to move Plaintiff, Plaintiff "had a Big Black eye," but did not state that Cottrell saw Plaintiff's black eye or that Cottrell ever observed any of Plaintiff's other alleged injuries. (Doc. No. 47-2.)

[23] As previously noted, unsworn statements in Plaintiff's response brief are not sufficient to support summary judgment. *See Roy*, 53 F.4th at 1347.

2019, Plaintiff suffered a three-centimeter laceration on his scalp for which he received sutures. (Doc. No. 43-4 at 52, 75.) Plaintiff claimed to have received this laceration by falling off the top rack of his bed. (*Id*.) Approximately one month after the alleged assault, on September 23, 2019, Plaintiff suffered a fractured right forearm, swollen right hand, and pain in his face and ribs. (*Id*. at 51, 73.) Plaintiff claimed to have received these injuries by falling off his top bunk after doing Flakka three days prior. (*Id*.) On October 4, 2019, Plaintiff claimed to have received his right forearm injury from being hit with a stick approximately "two weeks ago." (*Id*. at 99.)

Months later, in January and February of 2020, Plaintiff received an eye examination and facial x-rays, which revealed unremarkable osseous structures, no facial or orbital fractures, no focal bone lesions, no swelling, and no other abnormalities. (*Id*. at 84, 93.)

In April of 2020, Plaintiff claimed that he had been hit in his left eye approximately "4 months ago." (*Id*. at 63.) Several days later, Plaintiff claimed that same injury was caused during an assault that took place on September 23, 2020.[24] (*Id*. at 64.) Months later, in September of 2020, Plaintiff claimed that his eye hurt because he was "hit in the eye" in October of 2019. (*Id*. at 54.) Plaintiff received medical examinations and/or treatment for each of these injuries. (*See generally id*.)

---

[24] Plaintiff did not report either an assault or an eye injury during his September 23 medical examination, and medical staff reported no evidence of an eye injury. (*See* Doc. No. 43-4 at 51, 73.) Again, September 23, 2020 is obviously an incorrect date, as April 2020 was before that date. (Doc. No. 43-4 at 64.)

These medical records do not preclude a finding that Plaintiff was in fact assaulted on either August 25, 2019 or August 28, 2019, was in fact injured to some degree, and did not receive immediate medical attention despite being seen by Defendant Cottrell during the performance of his duties. However, in light of the unrefuted medical evidence that Plaintiff injured his head more than a month prior to the assault; the lack of medical evidence that Plaintiff re-injured his head at any point in August 2019; and Plaintiff's repeatedly contradictory statements to medical personnel as to *when*[25] he was otherwise injured and *how*[26], the undersigned finds Plaintiff's sworn, but otherwise unsupported, assertion that Defendant Cottrell saw his injuries and did nothing, alone, is not sufficient to establish that Defendant Cottrell acted with the requisite level of deliberate indifference.[27]

---

[25] Plaintiff's medical records show that, on March 18, 2019, he was treated for injuries remarkably similar to those alleged in the complaint, and he reported he received those injuries when he "got jump[ed] on by five or six guys." (Doc. No. 43-4 at 53.) Plaintiff does not allege – and the record does not support any inference – that he pursued a grievance process related to the March 18, 2019 incident. To the extent Plaintiff may be mistaken about the date of the attack and that his claims may actually have arisen on March 18, 2019, his § 1983 claims would be barred by the applicable two-year statute of limitations. He filed his complaint no earlier than April 2021. (Doc. No. 1 at 8 (mailing envelope postmarked April 9, 2021; no certificate of service provided).) *See Sylvester v. Rawlins*, No. CV 24-00089-KD-B, 2024 WL 3354452, at *2 (S.D. Ala. June 12, 2024), *report and recommendation adopted*, No. CV 1:24-00089-KD-B, 2024 WL 3345359 (S.D. Ala. July 8, 2024) ("In Alabama, the statute of limitations for filing a § 1983 action is two years." (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989)); *Burt v. Martin*, 193 F. App'x 829, 830 (11th Cir. 2006) ("Dismissal of a prisoner's complaint as time-barred prior to service will also be appropriate if it 'appear[s] beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'" (quoting *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (cleaned up)).

[26] Indeed, Plaintiff reports that he incurred the same injuries in March 2019, mid-to-late September 2019, October 2019, and December 2019 due to various, conflicting reasons.

[27] *See, e.g., Stout v. Crow*, No. 2:19-cv-494, 2024 WL 972973, at *14 (M.D. Ala. Feb. 14, 2024) ("[T]he only record evidence supporting a deprivation of due process claim are Plaintiff's

Indeed, even accepting—despite Plaintiff's conflicting statements in both his pleadings and the medical records—that Plaintiff did suffer various injuries on the date(s) in question and that Defendant Cottrell did see him bleeding thereafter, Plaintiff has nevertheless failed to demonstrate that Defendant Cottrell was actually, subjectively aware of a substantial risk of serious harm to Plaintiff based on his own conduct. Absent any allegations or evidence that Defendant Cottrell actually knew Plaintiff needed medical assistance and failed to provide such, one cannot reasonably conclude that Defendant Cottrell acted with subjective recklessness—rather than accidental inadequacy or negligence—when he observed Plaintiff on either August 25 or August 28.[28] *See Wade*, 106 F.4th at 1262; *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Accordingly, Defendant Cottrell is entitled to summary judgment on Plaintiff's deprivation of medical care claim.

---

unsupported—and, as noted above, sometimes contradicting—assertions from the Complaint. The undersigned finds these statements—absent further factual detail or evidentiary support and in light of Plaintiff's lack of response to the Disciplinary Reports—insufficient to defeat summary judgment.") (citations omitted); *Phillips v. Haigler*, No. 2:21-cv-177, 2024 WL 737805, at *6 n.5 (M.D. Ala. Jan. 22, 2024) ("Although the third-party statement attached to Plaintiff's Amended Complaint claims that Defendant struck and pepper sprayed Plaintiff 'for no reason' . . . , the undersigned finds that this single statement—absent any factual detail or evidentiary support and in light of the unrefuted evidence proffered by Defendant—is insufficient to defeat summary judgment.") (citations omitted); *see also Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.").

[28] In addition to claiming that Defendant Cottrell acted with deliberate indifference, Plaintiff twice describes Defendant Cottrell as having acted "negligently" and "incompetently" when he "overlook[ed]" Plaintiff's injuries. (Docs. No. 33-1 at 2; 47-1 at 1.) As explained above, negligence and incompetence are not sufficient grounds for Eighth Amendment liability.

e.    Plaintiff has failed to establish a genuine issue of material fact as to a Fourteenth Amendment equal protection claim against Defendants Jones, McClain, McCorvey, and Cottrell in their individual capacities.

Finally, Plaintiff alleges in a vague and conclusory manner that a "violation of the 14th Amendment to equal protection" occurred. (Doc. No. 1 at 3.) To state a viable equal protection claim, a plaintiff must generally allege that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on race, religion, national origin, or some other constitutionally protected basis. *Jones*, 279 F.3d at 946–47. Alternatively, a plaintiff may show a "class of one" equal protection claim by demonstrating that he was "intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Grider*, 618 F.3d at 1263–64 (citations omitted). In both instances, to be "similarly situated," the comparators must be prima facie identical in all relevant respects. *Id.* (citations omitted).

Plaintiff has failed to provide any allegations or evidence sufficient to support either a traditional equal protection claim or a "class of one" claim. First, Plaintiff wholly fails to identify any similarly situated inmates who have received more favorable treatment than him. To the contrary, he alleges that "the ADOC and those that are mentioned above have no care for the treatment of those in its care and custody" (Doc. No. 1 at 5), which appears to indicate Plaintiff's belief that ADOC officials have treated other inmates in a manner similar to Plaintiff. Second, Plaintiff wholly fails to allege that he suffered discriminatory treatment based on race, religion, national origin, or any other constitutionally protected basis. *See Jones*, 279 F.3d at 946–47. Accordingly, absent either showing, Defendants are

entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim.

## VI.   CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1.    Plaintiff's claims against the State of Alabama be DISMISSED with prejudice based on Eleventh Amendment immunity.

2.    Plaintiff's claims against Defendant Blair be DISMISSED without prejudice for failure to prosecute.

3.    Defendants Jones, McClain, McCorvey, and Cottrell's Special Report (Doc. No. 43), which the Court construes as a motion for summary judgment, be GRANTED.

4.    Judgment be ENTERED in favor of Defendants Jones, McClain, McCorvey, and Cottrell.

5.    This case be DISMISSED.

It is further ORDERED that, on or before **August 30, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of richard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 16th day of August, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE